UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ELLEN GARBER,                                    Case No. 07-14835

                Plaintiff,            Thomas L. Ludington
v.                                               United States District Judge

COMMISSIONER OF                                  Michael Hluchaniuk
SOCIAL SECURITY,                                 United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 24, 25)**

## I.   PROCEDURAL HISTORY

    A.    Proceedings in this Court

On November 9, 2007, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision that plaintiff received an overpayment of supplemental security income benefits (SSI).  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L. Ludington referred this matter to Magistrate Judge Charles E. Binder for the purpose of reviewing the Commissioner's decision.  (Dkt. 4).  Plaintiff filed an application to proceed *in forma pauperis* in this case.  (Dkt. 2).  Magistrate Judge Binder recommended that plaintiff's petition be rejected because, at a minimum, plaintiff

attested that she had $215,000 in a savings account.  (Dkt. 5).  Magistrate Judge

Binder's recommendation was adopted over plaintiff's objections by Judge

Ludington.  (Dkt. 7).  This matter was reassigned to the undersigned on January

17, 2008.  (Dkt. 9).  This matter is currently before the Court on cross-motions for

summary judgment.  (Dkt. 24, 25).

      B.    <u>Administrative Proceedings</u>

Plaintiff filed for SSI benefits on January 11, 1993.  (Tr. at 33).  In a

decision dated May 20, 2005, plaintiff was found disabled as of January 11, 1993

by Administrative Law Judge Allen Young blood and was awarded benefits.  (Tr.

at 115-123).  On July 13, 1996, after an investigation, the SSA sent plaintiff a

notice of overpayment, explaining that plaintiff had been overpaid benefits in the

amount of $18,513.32.  (Tr. at 146-148).  Plaintiff requested a hearing and, on

March 6, 2006, plaintiff appeared with counsel before Administrative Law Judge

(ALJ) Thomas L. Walters, who considered the case *de novo*.  In a decision dated

June 28, 2006, the ALJ found that plaintiff was overpaid SSI payments of

$18,043.32.  (Tr. at 13-17).  Plaintiff requested a review of this decision on July

13, 2006.  (Tr. at 8).  The ALJ's decision became the final decision of the

Report and Recommendation
Cross-Motions for Summary Judgment
*Garber v. Comm'r*; No. 07-14835

Commissioner when, after the review of additional exhibits[1] (AC-1, Tr. at 203-204), the Appeals Council, on September 13, 2007, denied plaintiff's request for review.  (Tr. at 4-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

   In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff was not without fault in causing and accepting the overpayment of SSI benefits.  Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

   [1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   STATEMENT OF FACTS

### A.   ALJ Findings

Plaintiff filed for supplemental security income payments on January 11, 1993 and was found disabled by Administrative Law Judge Allen Youngblood, as of that date. (Tr. at 14; 33-36). 115-123). In April 1996, the Lansing District Office was notified, by the Internal Revenue Service, that plaintiff had received $557 in interest in 1994 from the Dart National Bank. (Tr. at 14; 132). In June 1996, the Dart National Bank reported that a savings account in plaintiff's name had a minimum of $13,703 in it for the period of January 1994 through May 1996. (Tr. at 136-137). The names of Angela French and Robert Battige were also listed on the account. (Tr. at 15; 136).

In May 1995, a review was performed by the Lansing District Office of the SSA to determine what monies were due plaintiff. On the review form dated May 17, 1995, plaintiff reported she had no assets other than a 1992 Toyota worth $9000 and $40.00 in cash. (Tr. at 23, 24, 32). She stated that she had a checking account when she filed in January 1993 but had since been closed. (Tr. at 14; 31). Plaintiff also reported that she had no savings or checking accounts. (Tr. at 14; 24). In July 1995, plaintiff began receiving supplemental security income

payments.  (Tr. at 14).  She was paid retroactive benefits to January 1993, when she first filed for supplemental security income payments.  (Tr. at 14).

In July 1996, in letters from plaintiff and her attorney, plaintiff explained that she had received an automobile accident settlement of $85,000 in April 1993. (Tr. at 15; 142-146).  She stated that she paid off her debts and had a balance of $22,003 after that.  Plaintiff wrote that she paid the $22,003 to Mr. Battige because he had helped her with her financial responsibilities since 1988, when she stopped working.  (Tr. at 15; 142-146).  Plaintiff wrote that, while Mr. Battige kept the money in their joint savings account, she did not consider the money to be hers.  (Tr. at 15).

On July 13, 1996, plaintiff was sent a Notice of Overpayment stating she was overpaid $18,513.32 for the period of March 1993 through July 1996 due to excess income and resources.  (Tr. at 15; 146-148).  In November 1998, the c1aim was referred for suspected social security fraud.  (Tr. at 15; 149).  In a letter dated January 29, 1999, plaintiff reported that she told ALJ Youngblood that she had received the insurance settlement.  (Tr. at 15; 150-152).

On November 30, 2001, the Office of the Inspector General (OIG) noted that plaintiff opened a savings account at Dart National Bank on March 26, 1993 with a First Colonial Life insurance check in the amount of $20,001 and that

Report and Recommendation
Cross-Motions for Summary Judgment
*Garber v. Comm'r*; No. 07-14835

Robert Battige and Angela French were also on the account. (Tr. at 15; 177). The report also noted that plaintiff was identified as the "lead person" on the account until the bank statement dated July 31, 1995, which listed Robert Battige as the "lead" on the account and Angela French and plaintiff as "co-signers." (Tr. at 15; 177). The report also referred to six withdrawal slips showing that plaintiff made six large withdrawals from the savings account between May 26, 1995 to January 10, 1996. (Tr. at 15; 177). ALJ Youngblood was interviewed for the OIG report. (Tr. at 15; 179). He reviewed his hearing decision and stated that he felt "beyond a reasonable doubt" that if plaintiff had mentioned to him in her appeal that she had received the $85,000 insurance settlement, he would have mentioned it in his decision. (Tr. at 15; 179).

In September 2002, plaintiff filed a request for reconsideration and a request for waiver of overpayment. (Tr. at 15; 181-190). On January 15, 2003, the investigation was closed by OIG because the statute of limitations had expired. (Tr. at 15; 191). On September 30, 2003, plaintiff was notified that her reconsideration and waiver were denied. (Tr. at 15; 193-195). The denial noted that plaintiff never reported her income or resources to the SSA in a timely fashion. The denial also stated that there is a resource limit of $2,000 for an individual and $3,000 for a couple and plaintiff's resources were well over that

limit.  (Tr. at 15; 193-195).  On October 30, 2003, plaintiff filed a request for

hearing stating she was not overpaid and if she was overpaid she did not have any

money to pay it back.  (Tr. at 15; 196).

A hearing was held on March 6, 2006 by ALJ Walters.  Plaintiff was

represented by counsel at the hearing.  Plaintiff testified she was paid $85,000 in

March 2003 for an insurance settlement.  (Tr. at 16; 222-223).  She stated that she

used most of the money for herself and then gave the rest to Mr. Battige.  *Id*.  She

testified that she put the money into an account at Dart National Bank and that

there were three names on the account:  Mr. Battige, Angela French and herself.

(Tr. at 223-224).  Plaintiff explained that Angela French is her daughter and Mr.

Battige was her boyfriend at that time.  *Id*.  Since that time, they have married and

divorced.  *Id*.  Plaintiff testified that she had agreed to pay Mr. Battige the money

back that she owed him.  To do so, she went into the bank and took her name off

the account because it was money that she owed to Mr. Battige.  (Tr. at 226).

Plaintiff testified that she did not know that she had an obligation to tell the ALJ

about the $85,000 settlement. (Tr. at 16; 224).

The ALJ found plaintiff's testimony to be less than credible for several

reasons.  He observed that, while plaintiff claimant testified that she did not know

that she had an obligation to tell the ALJ about the settlement, she reported earlier

that she had, in fact, told him about the settlement. (Tr. at 16). The ALJ also noted that, while plaintiff testified that she removed her name from the account, the records did not reflect that. Further, while plaintiff stated that she did not consider the money in the account to be hers, the record showed that she made six large withdrawals from the savings account from May 1995 to January 1996. (Tr. at 16). Additionally, while plaintiff testified that her ADC payments stopped because Mr. Battige paid her bills, the Family Independence Agency reported that the ADC payments stopped because plaintiff reported that she had received $20,000 from an auto insurance settlement. (Tr. at 16). The ALJ also observed that while plaintiff testified that she agreed to pay back the money she owed to Mr. Battige, there was no written loan agreement in the record. (Tr. at 16).

The ALJ, after considering plaintiff's statements and the record as a whole, concluded that plaintiff could not be found to be without fault in causing and accepting the overpayment. (Tr. at 16-17). Specifically, the ALJ noted the following facts: (1) in November 1994, plaintiff did not report to ALJ Youngblood that she had received the insurance settlement of $85,000; and (2) in May 1995, plaintiff reported she did not have any savings or checking accounts and that she had not received any income since January 1993 and, at the same time, she had access to the money in the savings account as evidenced by the six withdrawals

she made between May 26, 1995 to January 10, 1996.  Based on these facts, the

ALJ found that plaintiff accepted SSI payments that she either knew or should

have known were incorrect.  Accordingly, she was not without fault in causing and

accepting the overpayment.  Given that plaintiff was not without fault, the ALJ

concluded that the conditions for relief by waiver were not met.  The ALJ

recommended that plaintiff pay back $50 per month due to her limited resources.

(Tr. at 17).

      B.    <u>Parties' Arguments</u>

          1.    Plaintiff's claims of error

Plaintiff claims that the transcript produced by the government is inaccurate

because it appears biased against her and her physician's records/statements

regarding physical and mental state are not included.  (Dkt. 24).[2]  Plaintiff points

to the statement in the notice of appeals council action that her medical records

from July 2006 do not relate to the overpayment issue.  She also asserts that the

dates on several documents are not correct.  Plaintiff argues that forcing her to pay

back the overpayment would deprive her of income needed for ordinary and

---

[2]  Plaintiff does not offer any missing evidence or the prior record. Providing documentation relating to the adjudication of a prior claim is generally the claimant's responsibility, not that of defendant. *Hunt v. Comm'r of Soc. Sec.,* *2008 WL 2858685, *2 (E.D. Mich. 2008)*.

necessary living expenses.  Further, she claims that the recovery would be against equity and good conscience because the settlement money was gone by the time she received the SSI payments.

Plaintiff further argues that she is without fault based on her physical and mental condition.  According to plaintiff, her intelligence and ability to reason were affected by the head injury she sustained in the automobile accident.  She says that she did not have the presence of mind to recall the settlement at the time of the hearing, which was three years after the settlement money was paid and gone.  (Dkt. 24).

Plaintiff also explains that she never stated that she told ALJ about the settlement "off the record" at the hearing.  Rather, according to plaintiff, she and the ALJ discussed her financial situation and how she was living.  Because of her mental state, she would not have recalled anything about the settlement three years after the fact, unless it was specifically addressed.  (Dkt. 24).  She points out that ALJ Youngblood stated that he did not specifically ask plaintiff about any lawsuit settlement and also stated that he did not believe plaintiff was trying to mislead him.

Plaintiff also argues that there is no evidence in the record that she made six withdrawals between May 1996 and January 1996 and she specifically denies

doing so.  She says any withdrawals were made by Mr. Battige during this time frame.  Plaintiff says she asked the bank to remove her from the account and it failed to do so.  She also points out that since Mr. Battige was made the "lead" on the account July 1995, it certainly seems that the bank did something to alter the account at that time.  Plaintiff argues that the notes of the SSA employee, Terry Page, who initiated the investigation, should not be treated as "fact" and that his description of their conversations is inaccurate and incomplete.

2.      Commissioner's counter-motion for summary judgment

The Commissioner first argues that plaintiff was, in fact, overpaid because her SSI "resources" exceeded the $2000 permitted by the regulations for a single person.  The Commissioner argues that the ALJ properly found plaintiff's credibility lacking.  For example, despite plaintiff's claim that she gave the remaining funds in the account to her boyfriend, he was unable to remember how much plaintiff had borrowed or how much she had repaid him.  (Dkt. 25, citing, Tr. 139, 141).  While plaintiff insisted that she had "signed over" the bank account to her friend, her name was still listed as the primary owner when Dart National Bank reported that *plaintiff* received $557.00 in interest during 1994.  (Dkt. 25, citing, Tr. at 132, 167).  Moreover, the OIG agent observed six withdrawal slips showing that plaintiff made six large withdrawals from the savings account from

May 26, 1995, to January 10, 1996, which the Commissioner argues confirms that plaintiff was the "owner," and was entitled to withdraw funds. (Dkt. 25, citing, Tr. at 177). In May 1995, plaintiff affirmatively stated that she did not have a savings account. But, in May 1996, the OIG agent had observed six large withdrawal slips in plaintiff's name. (Dkt. 25, citing, Tr. at 31, 133, 191-92). And, although there was still money in the account as late as May 1996, plaintiff reported that she had spent her entire settlement amount by the end of May 1993, just two months after she received it. (Dkt. 25, citing, Tr. at 143-44).

The Commissioner urges the Court to reject plaintiff's argument that, based on her head injury, she did not have the requisite ability to reason or the "presence of mind" to recall the importance of the lawsuit that resulted in an $85,000 settlement, given that, throughout the administrative proceedings and to this Court, plaintiff has offered very specific arguments. Further, throughout the administrative process, plaintiff was represented by counsel, who is presumed to represent his client in the best way possible. (Dkt. 25, citing, *Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)* ("when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.")).

Report and Recommendation
Cross-Motions for Summary Judgment
*Garber v. Comm'r*; No. 07-14835

The Commissioner next argues that plaintiff is "at fault" for the overpayment. Under 20 C.F.R. § 404.507(a)-(c), an individual is "at fault" in causing an overpayment if the overpayment resulted from: (a) an incorrect statement which she knew, or should have known, was incorrect; (b) a failure to furnish information which she knew, or should have known, was material; or (c) an acceptance of a payment that she knew, or could have been expected to know, was incorrect. According to the Commissioner, under any of these situations, plaintiff is at fault. Commissioner contends that plaintiff accepted SSI payments which she knew, or could have been expected to know, was incorrect. In July 1995, when plaintiff started receiving SSI benefits, she also received retroactive benefits from January 1993. (Dkt. 25, citing, Tr. at 129). Even if, as she contends, all the money had been spent or given to her boyfriend within a few months of receipt in March 1993, plaintiff could have been expected to know that for at least those few months, she would not have been eligible to receive need-based benefits. While plaintiff now argues that she transferred the money within "6-12 months" of receipt, the Commissioner asserts that this position does not help plaintiff because it actually expands the time that she had funds in excess of $2,000. And, regardless of whether plaintiff kept those funds for a few months or a year, plaintiff did not notify the SSA. The Commissioner urges the Court to

reject plaintiff's claim that even if she had recalled that she had some money for a short period in 1993, she would have "dismissed it" because she no longer had the funds when she "became involved with SSI again." (Tr. at 172). According to the Commissioner, even if one accepted her story that all her funds were gone within a few months or a year, she was "involved with SSI" during those months when she accepted needs-based payments with her retroactive payment in July 1995. (Tr. at 129).

The Commissioner points out that the burden is on plaintiff to establish that she is "without fault" before the agency even considers the second tier of the waiver statute, "against equity and good conscience." *Watson*, 940 F.2d at 171, citing 42 U.S.C. § 404(b). The Commissioner contends that plaintiff has not made that showing. However, even if plaintiff were without fault in accepting the overpayment, she is still not entitled to a waiver of recovery of overpayment, because such recovery would neither defeat the purpose of Title XVI, nor be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506. While plaintiff argues that she cannot afford to repay the overpayment, the Commissioner argues that the definition of "against equity and good conscience" found in the Social Security regulations does not allow a waiver simply because it would be difficult for the individual to repay the funds. Rather, recovery of an

overpayment is waived if recovery would "defeat the purpose of this subchapter . . . ." 42 U.S.C. § 404(b).

According to the Commissioner, whether recovery would defeat the purpose of the Act depends on "whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." 20 C.F.R. § 404.508(a).  Plaintiff bears the burden to show that repayment would defeat the purposes of the Act.  While plaintiff argues that she was unable to work, she says nothing about the possibility of disability payments.  Moreover, the Commissioner points out that plaintiff was in the process of getting a divorce where one of her assets was a house worth at least $250,000, mortgage-free.  Thus, the Commissioner argues that there is a real possibility that plaintiff has the funds to repay her $18,043.32 overpayment, a debt that should be borne by the individual who received the funds and not by the taxpayers.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being

Report and Recommendation
Cross-Motions for Summary Judgment
*Garber v. Comm'r*; No. 07-14835

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

        This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999).

    If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545. The substantial evidence standard applies to an ALJ's decision regarding whether a claimant was at fault. *See e.g.*, *Ashby v. Astrue*, 2009 WL 415275, *5 (D. Minn. 2009); *Risner*, 2008 WL 448677 at *1, citing, *Sierakowski*, 504 F.2d 831 (6th Cir. 1974)

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Burden of Proof and Legal Framework</u>

An overpayment of SSI benefits must be recovered unless relief from repayment can be granted under the waiver provisions. 42 U.S.C. § 1383(b). An overpaid individual is entitled to a waiver of recovery of the overpayment only if he or she is "without fault" in causing the overpayment, and (2) recovery of the overpayment would either defeat the purpose of Title XVI or be against equity and good conscience or impede efficient and effective administration of Title XVI due to the small amount involved. 42 U.S.C. § 1383(b)(1)(B); 20 C.F.R. § 416.550. Furthermore, "[t]he overpaid individual ... is not relieved of liability and is not

without fault solely because the SSA may have been at fault in making the overpayment." 20 C.F.R. § 416.552.  "Whether an individual is without fault depends on all the pertinent circumstances surrounding the overpayment in the particular case." *Id.*  "The [SSA"] considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition)." *Id.*  The SSA "will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have." *Id.*  Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from (a) failure to furnish information which the individual knew or should have known was material; (b) an incorrect statement which the individual knew or should have known was incorrect; or (c) acceptance of a payment which the individual knew or could have expected to know was incorrect.  *Id.*

The burden is on the Commissioner to prove, by a preponderance of evidence, that an overpayment has occurred.  *Ritter v. Astrue*, 2009 WL 529522, *7 (W.D.N.Y. 2009), citing, *Chlieb v. Heckler*, 777 F.2d 842, 848 (2d Cir. 1985).

Additionally, with respect to eligibility for waiver of an overpayment:

> No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault. *Morgan v. Finch*, 423 F.2d 551 (6th Cir. 1970). The fact that the SSA may have been at fault in making the overpayment does not relieve the recipient from liability for repayment if the recipient also was at fault. 20 C.F.R. § 416.552 (1982); *Morgan*, 423 F.2d at 553-54.

*Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983).  The burden is on the claimant to establish the negative prerequisite "without fault" before the SSA considers the second tier of the waiver statute (i.e., whether recovery would defeat the purpose of Title XVI, etc.).  *Watson v. Sullivan*, 940 F.2d 168, 171 (6th Cir. 1991); *see also Newberger v. Comm'r*, 293 Fed.Appx. 710 (11th Cir. 2008) ("A social security claimant who requests a waiver of recovery of an overpayment of benefits must provide information to support her claim that she is 'without fault in causing the overpayment' and that recovery would either defeat the purpose of Title [XVI] of the Social Security Act or be against equity and good conscience.");  *Risner v. Astrue*, 2008 WL 448677, *1 (E.D. Ky. 2008), citing, *Sierakowski v.*

*Weinberger*, 504 F.2d 831 (6th Cir. 1974).  If the plaintiff was not without fault, the inquiry need not proceed to the second prong.  *Watson*, 940 F.2d at 171.

      C.    <u>Analysis and Conclusions</u>

          1.    Overpayment

The undersigned must first examine whether the ALJ's decision regarding the existence of an overpayment is supported by substantial evidence.  The ALJ found that plaintiff was overpaid SSI payments of $18,043.32 for the period March 1993 through June 1996 due to excess income for March 1993 and excess resources for April 1993 through June 1996.  (Tr. at 17).  Plaintiff does not appear to dispute that the existence of the overpayment or the amount calculated.  She states in her motion for summary judgment that the issues before the Court are whether she was without fault and whether waiver would defeat the purpose of Title XVI.  (Dkt. 24, p. 1).  Plaintiff simply does not address this issue anywhere in her brief and this issue was not raised in her complaint.  (Dkt. 1).  Thus, the undersigned suggests that plaintiff either does not dispute this issue or has waived any objection to the ALJ's decision in this respect.  *Anthony v. Astrue*, 266 Fed.Appx. 451, 458 (6th Cir. 2008), citing, *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Even if this argument were not waived, the ALJ's decision is supported by substantial evidence.  Plaintiff does not dispute receiving $557 in interest in 1994. And, while plaintiff claims that signed over the remaining $20,000 in July 1995 to Mr. Battige, she does not deny receiving the funds in 1993, or spending the majority of the funds during a period in which she was required to be eligible for SSI and for which she ultimately received SSI payments.  Thus, the undersigned agrees with the ALJ that the Commissioner has satisfied its burden of showing, by a preponderance of the evidence, that plaintiff was overpaid and the amount of the overpayment.

      2.    Fault

As set forth above, the burden is on the claimant to establish the negative prerequisite "without fault" before the SSA considers the second tier of the waiver statute (i.e., whether recovery would defeat the purpose of Title XVI, etc.). *Watson v. Sullivan*, 940 F.2d 168, 171 (6th Cir. 1991); *see also Newberger v. Comm'r*, 293 Fed.Appx. 710 (11th Cir. 2008) ("A social security claimant who requests a waiver of recovery of an overpayment of benefits must provide information to support her claim that she is 'without fault in causing the overpayment' and that recovery would either defeat the purpose of Title [XVI] of the Social Security Act or be against equity and good conscience."); *Risner v.*

*Astrue*, 2008 WL 448677, *1 (E.D. Ky. 2008), citing, *Sierakowski v. Weinberger*, 504 F.2d 831 (6th Cir. 1974).

The ALJ concluded that plaintiff could not be found to be without fault in causing and accepting the overpayment and found plaintiff's credibility to be lacking. (Tr. at 16-17). Specifically, the ALJ noted the following facts: (1) in November 1994, plaintiff did not report to ALJ Youngblood that she had received the insurance settlement of $85,000; and (2) in May 1995, plaintiff reported she did not have any savings or checking accounts and that she had not received any income since January 1993 and, at the same time, she had access to the money in the savings account as evidenced by the six withdrawals she made between May 26, 1995 to January 10, 1996. Based on these facts, the ALJ found that plaintiff accepted SSI payments that she either knew or should have known were incorrect.

The undersigned suggests that the ALJ's conclusions and credibility findings are supported by substantial evidence. For example, while plaintiff claimant testified that she did not know that she had an obligation to tell the ALJ about the settlement, she reported earlier that she had, in fact, told him about the settlement. (Tr. at 16). The ALJ also noted that, while plaintiff testified that she removed her name from the account, the records did not reflect that. Further, while plaintiff stated that she did not consider the money in the account to be hers,

the record showed that she made six large withdrawals from the savings account from May 1995 to January 1996. (Tr. at 16). Additionally, while plaintiff testified that her ADC payments stopped because Mr. Battige paid her bills, the Family Independence Agency reported that the ADC payments stopped because plaintiff reported that she had received $20,000 from an auto insurance settlement. (Tr. at 16). Thus, the record evidence shows that plaintiff knew or should have known that she should have not have been receiving the SSI payments, given the automobile insurance settlement.

> 3.    Equity and good conscience.

"A social security claimant who requests a waiver of recovery of an overpayment of benefits must provide information to support her claim that she is 'without fault in causing the overpayment' and that recovery would either defeat the purpose of Title [XVI] of the Social Security Act or be against equity and good conscience." *Newberger v. Comm'r*, 293 Fed.Appx. 710 (11th Cir. 2008); *see also Risner v. Astrue*, 2008 WL 448677, *1 (E.D. Ky. 2008), citing, *Sierakowski v. Weinberger*, 504 F.2d 831 (6th Cir. 1974). If the plaintiff was not without fault, the inquiry need not proceed to the second prong. *Watson*, 940 F.2d at 171. Based on the ALJ's decision that plaintiff was not without fault, the ALJ did not reach the question of whether plaintiff met her burden of establishing a recovery

of the overpayment would defeat the purpose of Title XVI or be against equity and good conscience.  Thus, the undersigned declines to address an issue not addressed below.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned suggests that substantial evidence supports the Commissioner's determination that plaintiff was not without fault in causing and accepting the overpayment of SSI benefits.  Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 20, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on May 20, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Susan K. DeClercq, AUSA and the Commissioner of Social Security, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant: Ellen Garber, 9901 S. Wise Road, Sheperd, MI 48883.

s/Darlene Chubb
Judicial Assistant